IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PRECISION FABRICS GROUP, INC.    )
                                 )
            Plaintiff,           )
                                 )
        v.                       )      1:13-cv-645
                                 )
TIETEX INTERNATIONAL, LTD.,      )
                                 )
            Defendant.           )
                                 )
_____)
                                 )
PRECISION FABRICS GROUP, INC.    )
                                 )
            Plaintiff,           )
                                 )
        v.                       )      1:14-cv-650
                                 )
TIETEX INTERNATIONAL, LTD.,      )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court are the motions by Defendant, Tietex International, Ltd. ("Tietex"), to amend its answers to contest venue and to transfer these related actions to the District of South Carolina pursuant to Federal Rule of Civil Procedure 12(b)(3).  (Doc. 211.)[1]  Tietex contends that its failure to initially raise a venue defense should be excused in light of the

_____

[1] Unless otherwise indicated, all citations are to the docket in case number 1:13cv645, as the filings are substantively identical.  While Tietex initially sought dismissal or alternatively transfer, it now seeks only transfer.  (Doc. 274 at 4.)

Supreme Court's recent decision in <u>TC Heartland, LLC v. Kraft Foods</u> <u>Group Brands, LLC</u>, 137 S. Ct. 1514 (2017), which Tietex contends constitutes an intervening change of law. The court recently permitted discovery on the motion, and it has been fully briefed.

For the reasons set forth below, the court will grant Tietex's motion to amend its answers and, finding that venue is improper in this district, exercise its discretion to transfer these actions to the District of South Carolina, pursuant to 28 U.S.C. § 1406(a).

## I. BACKGROUND

### A. Procedural History

Plaintiff Precision Fabrics Group, Inc. ("PFG") filed these actions on August 6, 2013, and August 5, 2014, alleging that certain Tietex products incorporating flame-retardant fabrics infringe on PFG's U.S. Patent Nos. 8,501,639 ('639 Patent) and 8,796,162 ('162 Patent), respectively. (Doc. 1 at 2; Doc. 29 at 2-3.)[2] In its answers and subsequent filings, Tietex did not contest venue in this district. (Doc. 6 at 2, 5; Doc. 28 at 2; Doc. 32 at 2.)

---

[2] PFG brought the original action on the same day that the '639 Patent was issued by the U.S. Patent and Trademark Office ("PTO"). (Doc. 1 at 2.) Tietex voluntarily appeared and answered PFG's first complaint prior to being served with process. (Doc. 6.) On August 5, 2014, the PTO issued the '162 Patent to PFG, which PFG alleges is a continuation of its '639 Patent. (Doc. 1 at 3 (case no. 1:14cv650).) After failing to obtain Tietex's consent to amend its complaint, PFG filed a separate action, alleging that Tietex infringed on the '162 Patent. (Doc. 1 (case no. 1:14cv650).) The court subsequently granted PFG's motion for leave to amend its complaints and consolidate the proceedings. (Docs. 25, 29.)

In the ensuing four years, the court has conducted a <u>Markman</u>
hearing, construed the claims (Doc. 57), entertained a motion for
reconsideration (Doc. 127), resolved summary judgment motions
(Doc. 152), and entertained a motion for reconsideration of the
summary judgment ruling (Doc. 172). The case was set for trial
during the July 2017 term of court.

On May 22, 2017, the Supreme Court decided <u>TC Heartland</u>,
holding that under 28 U.S.C. § 1400(b), "a domestic corporation
'resides' only in its State of incorporation for purposes of the
patent venue statute." 137 S. Ct. at 1517. In reaching this
conclusion, the Court rejected <u>VE Holding Corp. v. Johnson Gas
Appliance Co.</u>, 917 F.2d 1574 (Fed. Cir. 1990), where the Federal
Circuit held that congressional amendment to 28 U.S.C. § 1391(c)
applied to § 1400(b) such that a defendant corporation was deemed
to "reside" in any district where it was subject to personal
jurisdiction. <u>Id.</u> at 1584.

The next day, on May 23, 2017, Tietex moved to continue the
trial and gave notice that "[i]n light of this change in the law
yesterday and because Tietex is not a corporation of the state of
North Carolina, Tietex is now considering the impact on venue in
this Court and any necessary motion related to venue will be filed
promptly after Tietex considers the full effects of <u>TC Heartland</u>."
(Doc. 175 at 6.) Tietex contended that "[s]etting a trial date in
September, October, or November 2017 will allow the Court ample

3

time for consideration of any such a motion." (Id. at 6-7) PFG
opposed the motion to continue trial (Doc. 177), but on May 26 the
court continued the trial to October 4, 2017 (Doc. 178). Tietex
filed the present motions to amend its answers and transfer venue
on August 7, 2017. (Doc. 211.)

On September 15, 2017, the court held a hearing to consider
the motions and, acting within its discretion, granted PFG's
request to conduct limited discovery into whether venue was proper
in the Middle District of North Carolina. See InVue Sec. Prods.
v. Mobile Techs., Inc., No. 3:17-cv-00270-MOC-DSC, 2017 U.S. Dist.
LEXIS 125693, at *2 (W.D.N.C. Aug. 9, 2017) (citing Mylan Labs,
Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 2003)). To accommodate
this development, the court delayed trial to October 30, 2017.
Once the parties filed updated briefing as a result of the venue
discovery, the court, on October 16, issued an order directing the
parties to stand down from trial preparation pending resolution of
the motions.

### B. Factual Background

The evidence, viewed in the light most favorable to PFG as
the non-moving party, establishes the following:

Tietex is a South Carolina corporation with its principal
place of business in Spartanburg, South Carolina. (Doc. 6 at 2.)
It manufactures and sells a broad range of fabrics nationwide,
including some using a flame-retardant at issue in this case.

4

(Id.; Doc. 32 at 5.)  The company has been registered to do business in North Carolina since 2001 (Doc. 275-11 (proof of business registration)) and, for purposes of these motions, acknowledges it has conducted sales of the allegedly infringing product in this district (Doc. 273, Tr. at 16:18-20, 53:20-23; see Doc. 277 (listing sales attributable to Doug Owens)).  Since at least August of 2013, Tietex has not owned, rented, or leased any real property in this district.  (Doc. 274-1, Wallace Dep. at 42:12-23, 103:6-25; Doc. 274-2, Owens Dep. 124:8-24.)  However, from 1991 until December of 2014, it did employ a regional sales manager, Doug Owens, who worked from his personal residence located in the district.  (Doc. 275-7, Owens Dep. at 11:12-19; Doc. 268 at 14; Doc. 268-3 at 3.)[3]

Owens was responsible for a large sales territory that encompassed most of the Southeast and the Midwest, including this district.  (Doc. 263-3 at 3; Doc. 274-2, Owens Dep. 21:6-16; Doc. 274-1, Wallace Dep. at 43:18-25.)[4]  Tietex provided Owens with a

---

[3] A second employee briefly worked from his home within North Carolina for a few months in early 2013, prior to the time these actions were filed.  (Doc. 274-3 at 2.)  While it is unclear whether he resided in the district, it is not relevant because his employment ended in May 2013, prior to issuance of the relevant patents.  (Id.)

[4] Based on the current record, the exact scope of Owens's sales territory is unclear.  (See Doc. 274-1, Wallace Dep. at 43:18-25 (describing Owens's sales territory as "most of the Southeastern United States and the Midwest, with the exception of a few places, quite possibly").)  While Owens described his sales territory as the "Southeast" during the relevant period in question, (Doc. 274-2, Owens Dep. 21:6-16), Tietex's

business card that listed his cell phone number (containing a local "336" area code) as well as his home address. (Doc. 275-3; Doc. 275-4, Wallace Dep. at 70:12-73:20.)[5] While the customers located within the district did not constitute a large portion of his overall sales, Owens occasionally visited some customers within the district to promote Tietex's products. (Doc. 274-2, Owens Dep. at 53:22-54:18; Doc. 274 at 10.) Owens accounted for millions of dollars in sales in 2013 and 2014, several hundred thousand dollars of which originated from customers in this district. (Doc. 275 at 18; Doc. 275-8; Doc. 277.)

Customers generally placed orders directly with Tietex's customer service department located at its headquarters in Spartanburg, South Carolina, and all such orders were received, fulfilled, and shipped from that location. (Doc. 274 at 10; Doc. 274-1, Wallace Dep. at 102:15-103:5; Doc. 274-2, Owens Dep. at 51:19-52:16.) Owens occasionally placed orders for new customers (Doc. 274-2, Owens Dep. at 51:25-52:16), but he lacked the

_____

sales records submitted by PFG indicate that he served a substantial number of customers located in the Midwest (Doc. 277 at 7, 11, 14-15 (noting sales in Texas, Arkansas, Kentucky, Missouri, Indiana, Illinois, Ohio, Wisconsin, and Minnesota)), and served some customers located in the Northeast (id. at 12 (noting sales in Pennsylvania)) as well as the Southwest (id. at 13-14 (noting sales in Arizona and California)).

[5] An internal Tietex document did list Owens's home telephone number. (Doc. 275-3 (listing home telephone number as "Business Phone 2"); Doc. 275-4, Wallace Dep. at 16:8-17:23.) However, there is no indication that Owens used his home telephone to conduct business (see Doc. 275-4, Wallace Dep. at 16:1-19:17) or listed the number on his business card (see id. at 70:12-73:20; Doc. 275-3).

authority to bind the company (Doc. 274-1, Wallace Dep. at 102:11-14).  To facilitate his work, he kept "[s]mall sample swatches" of fabric as well as marketing materials in his home (Doc. 274-2, Owens Dep. at 41:16-18), but there is no evidence that he maintained any inventory there (see Doc. 274 at 11; Doc. 274-1, Wallace Dep. at 101:19-21; Doc. 274-2, Owens Dep. at 41:2-43:16; 81:18-25).  Tietex also provided him with a company car, which was registered in the company's name to his home address.  (Doc. 275-6; Doc. 275-7, Owens Dep. at 27:13-28:25.)  He was reimbursed for the taxes and expenses associated with his use of the car (Doc. 275-7, Owens Dep. at 27:13-28:25, 30:4-25), as well as his cell phone (Doc. 275-4, Wallace Dep. at 19:2-17).

Tietex did not pay any part of Owens's residential expenses or exercise any control over his home.  (Doc. 274-1, Wallace Dep. at 101:5-21.)   No customers ever visited his residence, nor did Tietex ever hold meetings there.  (Id.; Doc. 274-2, Owens Dep. at 122:21-23.)  Similarly, Tietex did not publicly advertise Owens's home as its place of business.  (See Doc. 274 at 14-15; Doc. 274-1, Wallace Dep. at 101:1-4, 101:22-102:10; Doc. 274-2, Owens Dep. at 122:5-7.)

## II.  ANALYSIS

While acknowledging the "late state of this case," Tietex argues that its motions are timely in light of "an emerging trend for courts to recognize that TC Heartland was a complete change in

the venue law" after 27 years of Federal Circuit precedent to the contrary. (Doc. 212 at 2-3.) On the merits, Tietex argues that TC Heartland and applicable precedent make clear that venue is improper in this district.

PFG argues that Tietex's motion should be denied because Tietex waived its right to object to venue and TC Heartland is not an intervening change in law that would excuse Tietex's failure to timely raise this defense. (Doc. 260 at 3.) In the alternative, PFG contends that the intervening law exception should not apply because a transfer at this late stage of the litigation would unduly prejudice it. (Doc. 275 at 2-3; Doc. 260 at 4.) PFG asserts that Tietex waived any right to challenge venue by its continued participation in the litigation and delay in bringing the present motions. (Doc. 275 at 11-12.) On the merits, PFG argues that venue is proper in this district. (Doc. 275 at 14; Doc. 260 at 4.)[6]

---

[6] PFG also argues that Tietex failed to comply with this court's order permitting venue discovery. (Doc. 275 at 13.) This argument is unavailing. First, PFG has not moved for further relief. Second, even assuming (without deciding) that Tietex failed to provide discovery that PFG seeks, PFG has not demonstrated that it should be entitled to additional discovery, particularly in light of the Federal Circuit's recent decision in In re Cray Inc., No. 2017-129, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017). See Cutsforth, Inc. v. LEMM Liquidating Co., LLC, No. 12-CV-1200 (SRN/LIB), 2017 WL 3381816, at *5 (D. Minn. Aug. 4, 2017) (denying request for limited venue discovery in five-year patent litigation, noting "[i]f [the plaintiff] cannot at this stage identify facts that support a claim that Defendants have a 'regular and established place of business' in [this district], the Court cannot fairly conceive that it would be able to do so after more delay has been incurred").

## A.    Tietex's Motions to Amend Answers

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It may be denied where it "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 461 (4th Cir. 2013) (quoting Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)).

"Delay alone is an insufficient reason to deny leave to amend." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (citing Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Delay must be accompanied by undue prejudice, bad faith, or futility. Id.; Foman v. Davis, 371 U.S. 178, 182 (1962). Prejudice may be undue where the proposed amendment would "belatedly . . . change the character of the litigation," such as raising an entirely new legal claim or requiring additional discovery. Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 604 (4th Cir. 2010) (citing Deasy v. Hill, 833 F.2d 38, 42 (4th Cir. 1987)); Laber, 438 F.3d at 427.

PFG does not contend Tietex is acting in bad faith. The question is whether granting Tietex leave to amend its answers

would be futile or unduly prejudicial to PFG.[7]  For the reasons set forth below, the court finds that it would not.  Before reaching the questions of futility and the merits, however, the court must address the question of waiver.

### B.    Venue under § 1400(b)

"Venue is a waivable personal privilege of defendants." Hand Held Prod., Inc. v. Code Corp., No. 2:17-167-RMG, 2017 WL 3085859, at *1 (D.S.C. July 18, 2017) (citing Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979)).  "In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." Leroy, 443 U.S. at 183–184; Hoover Grp., Inc. v. Custom Metalcraft, Inc., 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("Venue requirements exist for the benefit of defendants.")

Venue in patent infringement actions is governed exclusively by 28 U.S.C. § 1400(b).  TC Heartland, 137 S. Ct. at 1520.  Under

---

[7] PFG also argues that Tietex's motions should be denied because they failed to include proposed amended answers, as required by Local Rule 15.1.  (Doc. 260 at 3.)  Tietex's initial failure was quickly cured, however, with its filing of a proposed amended answer in each case that added a simple sentence denying venue.  (Doc. 268 at 1; Doc. 268-1; Doc. 268-2.)  Therefore, this technical defect should not prevent amendment given the underlying purpose of Local Rule 15, the simplicity of the amendment, the lack of identifiable prejudice, and (as noted below) the significance of the late-blooming Supreme Court decision.  See Robinson v. Pepsi Bottling Grp., No. 1:13CV729, 2014 WL 2048127, at *4 (M.D.N.C. May 19, 2014) ("The obvious purpose [of Local Rule 15.1] is to avoid having cases thrust into limbo on such generalized requests that may later prove unsupported.")

§ 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). While seemingly straightforward, the statute's application has been the subject of conflicting interpretations.

In 1957, the Supreme Court held that § 1400(b) was the exclusive venue statute for patent cases and that a domestic corporation could "reside" only in its state of incorporation. Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 228 (1957). In 1990, however, the Federal Circuit, which exercises appellate jurisdiction over all patent cases, held that congressional amendment to the general venue statute, 28 U.S.C. § 1391(c), applied in patent cases. VE Holding, 917 F.2d at 1584. Under this more liberal approach, venue in patent cases became proper in any district where a defendant is subject to personal jurisdiction. Id.[8] The Federal Circuit's precedent prevailed,

---

[8] In particular, Congress amended § 1391(c) to provide that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." TC Heartland, 1137 S. Ct. at 1519 (quoting Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, sec. 1013(a), §1391(c), 102 Stat. 4642, 4669 (1988)). The Federal Circuit reasoned that the phrase "[f]or purposes of venue under this chapter" was "exact and classic language of incorporation" such that § 1391(c) established a uniform definition for all other venue statutes under the same "chapter," which included § 1400(b). Id. at 1519-20 (quoting VE Holding, 917 F.2d at 1579).

surviving certiorari petitions to the Supreme Court, until the
Supreme Court's May 22, 2017 decision in <u>TC Heartland</u>.  <u>See</u> <u>VE</u>
<u>Holding Corp. v. Johnson Gas Appliance Co.</u>, 499 U.S. 922 (1991)
(denying certiorari petition); <u>Century Wrecker Corp. v. Vulcan</u>
<u>Equip. Co.</u>, 923 F.2d 870 (Fed. Cir. 1990) (table), <u>cert. denied</u>,
499 U.S. 962 (1991).[9]

Though <u>TC Heartland</u> reaffirmed the Supreme Court's <u>Fourco</u>
holding that "'reside[nce]' in § 1400(b) . . . refers only to the
State of incorporation," it rejected <u>VE Holding</u>'s conclusion that
the congressional amendment to § 1391(c) overrode § 1400(b).  <u>TC</u>
<u>Heartland</u>, 137 S. Ct. at 1520.  In so doing, the Court abrogated
the Federal Circuit's nearly 30-year precedent that applied a
personal jurisdiction standard to venue decisions in patent cases.

**C.  Waiver**

A defendant's right to contest venue arises from 28 U.S.C.
§ 1406, which provides that a "district court of a district in
which is filed a case laying venue in the wrong division or
district shall dismiss, or if it be in the interest of justice,
transfer such case to any district or division in which it could
have been brought."  28 U.S.C. § 1406(a).  As a general rule, a

---

[9] While the denial of a petition for certiorari is not an expression on
the merits, <u>United States v. Carver</u>, 260 U.S. 482, 490 (1923), it is
relevant to determining whether it was reasonable for a party to raise
such a defense under the equitable doctrine of waiver, particularly in
cases where the Federal Circuit has exclusive appellate jurisdiction
over such matters, <u>CG Tech. Dev., LLC v. FanDuel, Inc.</u>, No. 2:16-CV-
00801-RCJ-VCF, 2017 WL 3207233, at *1 n.1 (D. Nev. July 27, 2017).

defendant will waive its right to contest venue if it fails to challenge venue either before its responsive pleading or as part of its responsive pleading.  Fed. R. Civ. P. 12(b), 12(h)(1); 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.")  Because Tietex failed to timely contest venue, the court must determine whether it has waived its right to do so.

An exception to the general rule of waiver exists "when there has been an intervening change in the law recognizing an issue that was not previously available." Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999).  As the Fourth Circuit has explained,

> [t]he intervening law exception to the general rule that the failure to raise an issue timely in the district court waives review of that issue on appeal applies when 'there was strong precedent' prior to the change, such that the failure to raise the issue was not unreasonable and the opposing party was not prejudiced by the failure to raise the issue sooner.

Big River Minerals Corp., 181 F.3d at 605-06 (4th Cir. 1999) (quoting Curtis Publ'g Co. v. Butts, 388 U.S. 130, 143 (1967)); see also Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) ("[A] party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." (quoting Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 92 (2d Cir. 2009))); Simpson

13

<u>Performance Products, Inc. v. NecksGen, Inc.</u>, No. 5:16-CV-00153-RLV-DCK, 2017 WL 3616764, at *3-4 (W.D.N.C. Aug. 23, 2017) (collecting cases).

In patent infringement actions, Fourth Circuit law applies "to procedural matters that are not unique to patent law." <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1564 (Fed. Cir. 1994). While there remains some uncertainty whether Federal Circuit or Fourth Circuit law should govern under these circumstances, the distinction is immaterial because "Federal Circuit law on the intervening law exception is substantively identical to Fourth Circuit law." <u>Hand Held</u>, 2017 WL 3085859, at *2 (citing <u>Minton v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 336 F.3d 1373, 1377 (Fed. Cir. 2003)).[10]

Tietex contends that <u>TC Heartland</u> qualifies as an intervening change in law. (Doc. 212 at 2.) PFG urges the court to follow what it characterizes as "the emerging consensus" to the contrary (Doc. 260 at 21), but, irrespective, to avoid applying it given the late stage of the litigation and Tietex's delay in filing the present motions (Doc. 260 at 13, 17; Doc. 275 at 8, 12).

---

[10] In the event a material distinction could be said to exist, the better view favors application of Fourth Circuit law because the question is not unique to patent law. <u>See Simpson Performance</u>, 2017 WL 3616764, at *3 n.2 (W.D.N.C. Aug. 23, 2017); <u>Boston Sci. Corp. v. Cook Grp. Inc.</u>, No. 15-980-LPS-CJB, 2017 WL 3996110, at *4 (D. Del. Sept. 11, 2017).

The Federal Circuit has yet to directly address this issue,[11] and lower courts remain somewhat divided. "The majority of cases have found that TC Heartland does not constitute intervening law excusing waiver." Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc., No. 3:15-CV-00064-HZ, 2017 WL 3877858, at *6 (D. Or. Sept. 5, 2017) (collecting cases); Fox Factory, Inc., v. SRAM, LLC, Nos. 3:16-CV-00506-WHO, 3:16-cv-03716-WHO, 2017 WL 4551486, at *7 (N.D. Cal. Oct. 11, 2017) ("The majority of cases still hold that patent venue law did not change and no exception to waiver applies."). These opinions rely on the fact that "[t]he Supreme Court has never overruled Fourco, and the Federal Circuit cannot overrule binding Supreme Court precedent." Cobalt Boats, LLC v. Sea Ray Boats, Inc., No. 2:15CV21, 2017 WL 2556679, at *3 (E.D. Va. June 7, 2017); Columbia Sportswear, 2017

_____

[11] On four occasions, the Federal Circuit has declined to grant mandamus relief from district court judgments denying motions to dismiss for improper venue in light of TC Heartland, holding that the district courts committed no clear abuse of discretion. In re Hughes Network Sys., LLC, No. 2017-130, 2017 WL 3167522, at *1 (Fed. Cir. July 24, 2017); In re Sea Ray Boats, Inc., No. 2017-124, 2017 WL 2577399, at *1 (Fed. Cir. June 9, 2017); In re Techtronic Indus. N. Am., Inc., No. 2017-125, 2017 U.S. App. LEXIS 16324, at *3 (Fed. Cir. July 25, 2017); In re Nintendo of Am., Inc., No. 2017-127, 2017 U.S. App. LEXIS 14835, at *3-4 (Fed. Cir. July 26, 2017). In these decisions, the Federal Circuit declined to decide whether TC Heartland constituted an intervening change in law and held that mandamus was unavailable under the circumstances. See, e.g., In re Hughes, 2017 WL 3167522, at *1 ("Our ruling is based largely on the fact that Hughes filed its motion only after the TC Heartland case was decided by the Supreme Court and less than two months before trial."); In re Sea Ray Boats, 2017 WL 2577399, at *1 (declining to grant mandamus relief where case was "on the eve of trial"). But see In re Sea Ray Boats, 2017 WL 2577399, at *1 (Newman, J. dissenting) ("There is little doubt that the Court's decision in TC Heartland [] was a change in the law of venue . . . .").

WL 3877858, at *6 (collecting cases). Under this rationale, district courts have held that "the conflict between Fourco and VE Holding was a defense that was available to Defendants just as easily as it was to the plaintiff in TC Heartland, who initially raised the argument before Plaintiff filed this case." Cobalt Boats, 2017 WL 2556679, at *3; Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC, No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618, at *20 (E.D. Tex. June 20, 2017) ("While such a motion might have been viewed as meritless in a lower court, that does not change the harsh reality that [the defendant] would have ultimately succeeded in convincing the Supreme Court to reaffirm Fourco, just as the petitioner in TC Heartland did."); Reebok Int'l Ltd. v. TRB Acquisitions LLC, No. 3:16-CV-1618-SI, 2017 WL 3016034, at *3 (D. Or. July 14, 2017) (same).

However, a "growing number of district courts have reached the opposite conclusion." Smart Wearable Techs. Inc. v. Fitbit, Inc., No. 3:16CV00077, 2017 WL 3725630, at *3 (W.D. Va. Aug. 29, 2017) (collecting cases); Columbia Sportswear, 2017 WL 3877858, at *7 ("[A] growing minority of cases that disagree with Cobalt Boats and have held that TC Heartland establishes intervening law excusing waiver.") These cases have recognized that "TC Heartland affected a 'sea change' in the law of venue for patent cases." OptoLum, Inc. v. Cree, Inc., No. CV-16-03828-PHX-DLR, 2017 WL 3130642, at *2 (D. Ariz. July 24, 2017); Westech Aerosol Corp. v.

16

3M Co., No. C17-5067-RBL, 2017 WL 2671297, at *2 (W.D. Wash. June 21, 2017) ("TC Heartland changed the venue landscape."). Similarly, these opinions reject the notion that an improper venue defense was "available" merely because the defendants in TC Heartland ultimately prevailed on the issue. See, e.g., OptoLum, 2017 WL 3130642, at *4; Simpson Performance, 2017 WL 3616764, at *5 (collecting cases).

This court agrees with those courts that conclude that TC Heartland effected a fundamental, intervening change in patent law. It is true that the Federal Circuit could never have overruled Fourco. But VE Holding never purported to do so. Rather, it concluded, in what it deemed a "case of first impression," that the subsequent congressional amendment to § 1391(c) necessarily altered the interpretation of § 1400(b). VE Holding, 917 F.2d at 1575. Indeed, the Federal Circuit made plain that "Section § 1391(c) as it was in Fourco is no longer." Id. at 1579; see OptoLum, 2017 WL 3130642, at *2.

The Supreme Court in TC Heartland similarly acknowledged the impact of the 1988 amendments on the Federal Circuit's decision in VE Holding, noting that "[the venue] landscape remained effectively unchanged until 1988." TC Heartland, 137 S. Ct. at 1519 (emphasis added); Simpson Performance, 2017 WL 3616764, at *5 ("[B]oth the Federal Circuit and the Supreme Court identified the fact that the venue landscape had changed significantly in the

17

post-<u>Fourco Glass</u>/pre-<u>TC Heartland</u> period as the basis for the Federal Circuit's decision in <u>VE Holding</u>."). Consequently, the Supreme Court focused the question before the Court as follows: "the only question we must answer is whether Congress changed the meaning of § 1400(b) when it amended § 1391." <u>TC Heartland</u>, 137 S. Ct. at 1520.[12] In concluding that Congress did not, the Court expressly rejected <u>VE Holding</u>.

As a legal and practical matter, therefore, the interpretation adopted in <u>TC Heartland</u> was not "available" to Tietex prior to the Supreme Court's May 22, 2017 decision, because it conflicted directly with the strong precedent set by the Federal Circuit in <u>VE Holding</u>. This "clearly foreclosed any reasonable argument [Tietex] could have made" to contest venue. <u>Simpson Performance</u>, 2017 WL 3616764, at *6 ("<u>VE Holding</u> remained binding precedent on this Court, and every other district court relative to patent litigation, for twenty-seven years, with the Federal Circuit reaffirming its ruling in <u>VE Holding</u> multiple times prior to <u>TC Heartland</u>.") (citing <u>Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.</u>, 395 F.3d 1275, 1280 (Fed. Cir. 2005))).

---

[12] The Supreme Court specifically addressed the current version of § 1391, as amended in 2011. The 2011 amendment changed the 1988 preamble of § 1391(c) from "[f]or purposes of venue under this chapter" to "[f]or all venue purposes" and added a savings clause to § 1391(a) stating that the venue statute did not apply when "otherwise provided by law." <u>TC Heartland</u>, 137 S. Ct. at 1521. The Court rejected the notion that the 2011 amendments reflected any congressional intent to ratify the Federal Circuit's decision in <u>VE Holding</u>. <u>Id.</u>

In addition to the Federal Circuit, members of Congress similarly recognized the binding nature of VE Holding. OptoLum, 2017 WL 3130642, at *4 (citing S. Rep. No. 110-259, at 25 (2008); H.R. Rep. No. 114-235, at 34 (2015)).

When Tietex filed its answers in these cases, some two and one-half years before the Supreme Court's decision in TC Heartland, this court would have been required to apply VE Holding to any venue challenge. See Simpson Performance, 2017 WL 3616764, at *6 n.3 (noting the court's own research found only one case during the twenty-seven year period in which a district court did not apply VE Holding) (citing West v. Terry Bicycles, Inc., No. 99-1498, 2000 WL 152805, at *5 (Fed. Cir. Feb. 10, 2000) (unpublished))). Venue was plainly proper under that standard. The general maxim is that objections must be raised and preserved. But it would be a harsh and unfair result in this context to punish Tietex for not having contested venue at a time when the court would have been unable to have granted relief. See OptoLum, 2017 WL 3130642, at *4.

PFG argues nevertheless that excusing Tietex's waiver would unduly prejudice it. (Doc. 260 at 26; 275 at 5-8.)[13] PFG cites

_____

[13] Within the context of the intervening change in law analysis, the Fourth Circuit has suggested that a court should consider prejudice to the plaintiff. Big River Minerals Corp., 181 F.3d at 605-06; Simpson Performance, 2017 WL 3616764, at *7 n.4 ("However, in light of Big River Mineral Corp.'s suggestion that courts must consider prejudice to the plaintiff when applying the intervening change in the law exception to

the additional delay associated with any transfer as well as the additional time and expense of resubmitting materials for trial. (Doc. 260 at 27.) In addition, it claims that it would be deprived of "the Court's expertise in this matter." (Id.) According to PFG, Tietex forfeited any right to contest venue because it waited "more than two months after the Supreme Court's decision in TC Heartland, and less than two months before trial is scheduled to begin." (Doc. 260 at 13; Doc. 275 at 2.) Finally, PFG contends that Tietex waived any remaining right to challenge venue by its continued participation in the litigation. (Doc. 275 at 11–12.)

Tietex argues that its delay in filing should not give rise to waiver because it brought this issue to the attention of PFG and the court the day after the Supreme Court's decision in TC Heartland. (Doc. 268 at 7.) Tietex also claims that its delay was reasonable in light of the outcome of early decisions on this issue. (Id.) During the intervening period, Tietex contends, it simply complied with the court-imposed deadlines as opposed to actively litigating substantive matters. (Id.) It also argues that any "minor administrative inconvenience" associated with a potential transfer does not rise to the level of prejudice necessary to proceed with a trial in an improper venue. (Id. at

the general rule of waiver, differences in the stage of the proceedings at which the improper venue defense is first raised may be a proper basis for reaching contrary conclusions as to whether a defendant may rely on TC Heartland to overcome the general rule of waiver.")

8.)  Further, it contends, PFG cannot seriously claim urgency as

Tietex is no longer selling the allegedly infringing products at

issue.  (Id. at 9.)

As one district court recently noted,

the Court, after excusing waiver based on TC Heartland,
should next proceed by assessing whether, in any event,
a defendant should not be permitted to press its effort
to change venue. Prototypical examples of where the
Court might reach such a conclusion include where a
defendant raises venue for the first time on the eve of
trial, or many months (or years) after TC Heartland was
handed down, or where dismissal or transfer would unduly
prejudice a plaintiff.

Boston Sci. Corp. v. Cook Grp. Inc., No. 15-980-LPS-CJB, 2017 WL

3996110, at *9 (D. Del. Sept. 11, 2017); Eyetalk365, LLC v. Skybell

Techs., Inc., No. 3:16-CV-702-FDW-DCK, 2017 WL 3669548, at *1

(W.D.N.C. Aug. 24, 2017) ("Even if a venue challenge is properly

preserved, a defendant may still waive that challenge by actively

participating in the case or by waiting a significant period of

time to seek relief." (collecting cases)).

Though Tietex's several-week delay in filing the present

motion could have been problematic, it did not prejudice PFG in

this instance.  Tietex did raise the issue the day after TC

Heartland was decided.  (Doc. 175 at 6-7; Doc. 268 at 7.)  Shortly

thereafter, the court moved the trial date to October.  (Doc. 178.)

The parties' involvement in the litigation during the interim was

almost exclusively limited to filing pre-trial evidentiary motions

required by orders of the court.  See Boston Sci. Corp., 2017 WL

21

3996110, at *10 ("[T]he Court does not deem it appropriate under the circumstances of this case to effectively hold against Defendants their active participation in the litigation-participation which was required by orders of this Court.").[14] These motions would have been filed no matter where the action is pending, and the court has not taken any action on them.

The court concludes that Tietex did not waive its venue defense as a result of any delay and participation in the litigation. PFG cites to no undue prejudice from the interim delay. Apart from the limited discovery on the issue of venue, the parties have proceeded in the same fashion as they would have otherwise, and all pending motions will remain on the docket for the trial judge to decide. See Nautilus, Inc. v. Icon Health & Fitness, Inc., No. C16-5393-RBL, 2017 U.S. Dist. LEXIS 148431, at *4 (W.D. Wash. Sep. 13, 2017) (granting motion to transfer in spite of 87-day delay in bringing motion to dismiss for improper venue after TC Heartland, excusing the "short delay in bringing the motion" and noting "[t]he work that was done in the 87 days between the opinion and motion in preparation for the Markman hearing was not wasted; the parties can presumably use the same document in Utah"); Eyetalk365, LLC, v. Zmodo Technology Corporation Limited,

_____

[14] PFG notes that Tietex did move for limited discovery from PFG during the intervening period (Doc. 181 at 7), a request this court denied (Doc. 197 at 4).

No. 3:16-cv-00789-FDW-DCK, 2017 WL 4684189, at *3 (W.D.N.C. Oct. 18, 2017) (holding that defendant did not waive improper venue defense under the intervening law exception in spite of two-month delay in filing its motion, where there was no evidence of intentional delay); cf. Chassen v. Fid. Nat'l Fin., Inc., 836 F.3d 291, 303 (3d Cir. 2016) (holding that the defendant's approximately three-month delay in filing its motion to compel bipolar arbitration following an intervening change in law did not result in waiver where the defendant notified the plaintiffs of their intention to engage in bipolar arbitration one month after the decision was issued and "virtually no substantive or procedural litigation occurred during this delay").

PFG points out that this case is further developed than others that were transferred in light of TC Heartland. See, e.g., Hand Held, 2017 WL 3085859, at *3 ("[L]itigation in this matter has just begun."); Maxchief Investments Ltd. v. Plastic Dev. Grp., LLC, No. 3:16-CV-63, 2017 WL 3479504, at *5 (E.D. Tenn. Aug. 14, 2017) (noting "the case is not so far along that a transfer would frustrate judicial economy" where "[t]he Court has not issued any rulings on claim construction and the parties have not yet filed dispositive motions"). That may be. But that is more a function of the timing of TC Heartland than anything else. In any event, the stage of the litigation is relevant, but it is not dispositive in determining prejudice. See Columbia Sportswear, 2017 WL

23

3877858, at *10 (recognizing improper venue defense under
intervening law exception where "the parties have already filed
dispositive motions, engaged in claim construction, and have
otherwise fully litigated this case up to the eve of trial");
Cutsforth, Inc. v. LEMM Liquidating Co., LLC, No. 12-CV-1200
(SRN/LIB), 2017 WL 3381816, at *1, *4 (D. Minn. Aug. 4, 2017)
(recognizing improper venue defense in five-year-old case in spite
of the "advanced state of [the] litigation"); In re Sea Ray Boats,
2017 WL 2577399, at *2 (Newman, J., dissenting) (arguing in favor
of temporary stay less than one week before trial to determine
whether venue was appropriate).

Here, the parties have filed dispositive motions,
participated in pre-trial briefings, and are otherwise actively
preparing for trial. However, PFG has yet to articulate any
meaningful prejudice beyond the incurrence of administrative
expenses related to a transfer. (See Doc. 260 at 26-28.) All
pending pretrial motions address the scope of permissible trial
evidence and would have been filed irrespective of the venue
question. Moreover, as Tietex notes, it no longer sells the
allegedly infringing product. (Doc. 268 at 9.) Thus, any
potential delay cannot be said to risk further injury to PFG. PFG
even candidly acknowledges that "[a]lthough this case has been
litigated for over four years, the trial of this matter should be
relatively simple" as the issues have been narrowed for trial.

(Doc. 259 at 1.) Indeed, it is difficult to imagine what substantial prejudice would result from transferring this case to a district that is, in PFG's words, "literally next-door." (Doc. 260 at 29.)

For these reasons, the court concludes that Tietex did not waive its right to contest improper venue under the circumstances and should be granted an opportunity to amend its answers to challenge venue. See <u>Columbia Sportswear</u>, 2017 WL 3877858, at *10.

### D. Whether Venue is Proper in this District

While the underlying interpretation of § 1400(b) is governed by Federal Circuit law, <u>In re Cray Inc.</u>, No. 2017-129, 2017 WL 4201535, at *4 (Fed. Cir. Sept. 21, 2017), the burden of proof for a motion for improper venue is a procedural matter governed by Fourth Circuit law, <u>see</u> <u>Boston Sci. Corp.</u>, 2017 WL 3996110, at *4 ("That venue motions are procedural—and therefore governed by the law of the regional circuit—is true even though the substantive questions at issue may be controlled exclusively by Federal Circuit law.") (citing <u>In re TLI Commc'ns LLC Patent Litig.</u>, 823 F.3d 607, 610 (Fed. Cir. 2016))). Accordingly, when an objection to venue has been raised under Federal Rule of Civil Procedure 12(b)(3), "the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action." <u>ATI Indus. Automation, Inc. v. Applied Robotics,</u>

<u>Inc.</u>, No. 1:09CV471, 2013 WL 1149174, at *7 (M.D.N.C. Mar. 19, 2013) (quoting <u>Plant Genetic Sys., N.V. v. Ciba Seeds</u>, 933 F. Supp. 519, 526 (M.D.N.C. 1996)). "To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." <u>Mitrano v. Hawes</u>, 377 F.3d 402, 405 (4th Cir. 2004). In determining whether the plaintiff has made a prima facie showing, the court may "consider evidence outside the pleadings" and must "view the facts in the light most favorable to the plaintiff." <u>Aggarao v. MOL Ship Mgmt. Co.</u>, 675 F.3d 355, 365-66 (4th Cir. 2012); <u>Simpson Performance</u>, 2017 WL 3616764, at *2.

Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Consistent with its legislative purpose and "specific and unambiguous requirements," the patent venue statute "is not one of those vague principles which, in the interests of some overriding policy, is to be given a liberal construction." <u>Cray</u>, 2017 WL 4201535, at *4 (quoting <u>Schnell v. Peter Eckrich & Sons, Inc.</u>, 365 U.S. 260, 262 (1961)).

Here, there is no dispute that Tietex is incorporated in South Carolina and therefore does not "reside" in this district. (Doc. 32 at 4.) And, as noted above, Tietex has conceded for purposes

of these motions that "acts of infringement" were committed within the district. (Doc. 273, Tr. at 16:18-20, 53:20-23.) The relevant inquiry, therefore, is whether Tietex has "a regular and established place of business" within the Middle District of North Carolina.

Following the Supreme Court's decision in TC Heartland, district courts have attempted to identify criteria to assist in applying a statutory standard in the modern era. Happily, the Federal Circuit recently set forth three requirements for doing so: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." Cray, 2017 WL 4201535, at *4. Each must be met. Id. However, as the Federal Circuit counseled, "no precise rule has been laid down and each case depends on its own facts." Id. at *5.[15]

PFG contends that the evidence establishes each of the three Cray factors. (Doc. 275 at 16.) PFG notes that (1) Owens lived and worked out of the same home office located within the district for a period of over twenty years, using part of his home as a

---

[15] This inquiry is properly limited to the time the cause of action accrued and a reasonable time thereafter. Wi-LAN Inc. v. Lenovo (United States), Inc., No. 17CV365-BEN-MDD, 2017 WL 3194692, at *3 (S.D. Cal. July 27, 2017) ("[U]nder the patent venue statute, venue is properly lodged in the district if the defendant had a regular and established place of business at the time the cause of action accrued and suit is filed within a reasonable time thereafter.") (quoting Welch Sci. Co. v. Human Eng'g Inst., Inc., 416 F.2d 32, 35 (7th Cir. 1969))).

sales office (id.); (2) Tietex provided Owens a company car, which was registered in Tietex's name and listed Owens's home address (id. at 17); (3) Owens maintained samples and marketing literature in his home (id.); (4) Owens interacted with and generated sales from customers located within the district (id. at 18); and (5) Tietex provided Owens with business cards that identified his home address and telephone number (id. at 16-17).[16]

While it is highly doubtful that PFG has demonstrated a prima facie case as to the first two requirements,[17] PFG's failure on the third is determinative. PFG must present prima facie evidence

---

[16] PFG's effort to rest venue on the contention that Tietex maintained a regular and established business at a High Point facility (in the district) of Tietex Interiors, a former business unit of Tietex International, is without merit. (Doc. 275 at 19-21.) In support of this contention, PFG relies on two reports prepared by Dun & Bradstreet, a commercial directory service. PFG notes that a 2012 Dun & Bradstreet report listed Doug Owens as a "Principal" of Tietex Interiors and noted his home address in Colfax, North Carolina. (Doc. 275-12 at 3.) In addition, PFG relies on a 2016 Dun & Bradstreet report, which identified a location within the district as an address of Tietex International, not Tietex Interiors. (Doc. 275 at 20-21, Doc. 275-15 at 3.) However, Tietex has provided sworn testimony that it maintained no facilities in the district during the relevant period and that Tietex Interiors ceased all business operations in 2009 when it was sold. (Doc. 268-3 at 4; Doc. 275-4, Wallace Dep. at 89:17-91:7; Doc. 274-1, Wallace Dep. at 19:18-20:25, 25:1-9; Doc. 274-3 at 2-3 (unsworn counsel letter).)

[17] Even if the evidence were sufficient to establish a "physical place" in the district, PFG has not demonstrated that it was a "regular and established" place of business. See Cray, 2017 WL 4201535, at *6 ("[I]f an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant."); Regents of the Univ. of Minnesota v. Gilead Scis., Inc., No. 16-CV-2915 (SRN/HB), 2017 WL 4773150, at *6 (D. Minn. Oct. 20, 2017) ("While [the defendant] may have employed a sales force of approximately a dozen people over at least a two-year period, the physical location of that sales force is not permanently fixed.")

that the regular and established business is "a place of the defendant, not solely a place of the defendant's employee." Cray, 2017 WL 4201535, at *6. This means that "the defendant must establish or ratify the place of business." Id. The Federal Circuit has identified several important considerations for this determination, including (1) whether the defendant owns, leases, or otherwise exercises control over the premises; (2) "whether the defendant conditioned employment on an employee's continued residence in the district"; (3) whether the defendant stored inventory there to be sold or distributed from that place; and (4) whether the defendant made outward representations that the physical location was its place of business. Id. at *6-7 (citations omitted).

Here, there is no evidence that Tietex owned or rented property in the district during the relative period in question, nor is there any suggestion it otherwise exercised control over Owens's residence. (See Doc. 274-1, Wallace Dep. at 99:16-23; 101:1-21.) PFG's reliance on the fact that Tietex maintained a company car within the district is unavailing. See Regents of the Univ. of Minnesota v. Gilead Scis., Inc., No. 16-CV-2915 (SRN/HB), 2017 WL 4773150, at *6 (D. Minn. Oct. 20, 2017) ("[L]ease payments for transient vehicles do not sufficiently evidence [the defendant's] regular and established physical place of business in [the district]."); Am. Cyanamid Co v. Nopco Chem. Co., 388 F.2d

818, 820 (4th Cir. 1968) (finding venue improper where a regional sales manager worked from his home located in the district and the company provided him with a car that it rented and insured).

In addition, there is no evidence that Tietex ever conditioned Owens's employment on his residence in the district or played any role in selecting its location. (See Doc. 274 at 10-12.) None of the reimbursement or support received by Owens was conditioned on his location here. (See Doc. 274-1, Wallace Dep. at 100:2-16.) Like the employees in Cray, Owens was "free to live where [he] chose as far as [the defendant] was concerned." Cray, 2017 WL 4201535, at *8 (quoting Grantham v. Challenge-Cook Bros., 420 F.2d 1182, 1185 (7th Cir. 1969)); Regents of the Univ. of Minnesota, 2017 WL 4773150, at *7.

While Owens served some customers located in the district and may have assisted them in placing orders (Doc. 274-2, Owens Dep. at 51:25-52:16), he did not sell products directly to customers, maintain inventory, provide technical assistance, or otherwise engage in activities that would suggest that Tietex operated a regular and established business here. Cf. In re Cordis Corp., 769 F.2d 733, 737 (Fed. Cir. 1985) (finding venue proper under § 1400(b) where two sales representatives operating remotely had accepted orders within the state, kept inventory in their homes, and conducted seminars and technical consultations concerning the

product that was subject to the infringement action).[18] The mere fact that Owens maintained "[s]mall sample swatches" of fabric and literature at his home is insufficient to establish venue. See Regents of the Univ. of Minnesota, 2017 WL 4773150, at *6-7 (holding that the presence of twelve employees operating remotely within the district was insufficient to support venue under § 1400(b), even where some employees maintained literature in their homes).[19]

Finally, Tietex did not represent Owens's residence as its own place of business. Tietex did not list the address on its website or in any directory, and it did not place the company's name on any signage at the location. (Doc. 274-1, Wallace Dep. at 101:1-102:10; Doc. 274-2, Owens Dep. at 122:5-7); see Cray, 2017 WL 4201535, at *7. The listing of Owens's residential address and

---

[18] In support of its argument that Owens provided "support and consultation services" to customers, PFG relies on an incomplete entry in a document prepared by Owens that references a burn test on a Tietex fabric conducted by a customer within this district. (Doc. 275 at 18; Doc. 275-9 at 3 ("work with HSM to get 100% Kingsdown filler, burn t[est]").) However, Owens testified that while he would encourage customers to conduct such a test, he would not do so himself for liability reasons. (Doc. 274-2, Owens Dep. at 52:17-53:21.)

[19] Owens's sales revenue provides little evidence that Tietex maintained a regular and established place of business in the district, as opposed to simply "doing business" here. See Talsk Research Inc. v. Evernote Corp., No. 16-CV-2167, 2017 WL 4269004, at *5 n.6 (N.D. Ill. Sept. 26, 2017); Cellular Dynamics Int'l, Inc. v. Lonza Walkersville, Inc., No. 17-CV-0027-SLC, 2017 WL 4046348, at *5 (W.D. Wis. Sept. 12, 2017). Similarly, PFG's reliance on fact that Tietex is registered to do business in North Carolina (Doc. 275 at 19) provides little support that it maintained a regular and established place of business within this district.

mobile telephone number on his business card indicates little beyond the fact that he conducted business in the district. See Cray 2017 WL 4201535, at *8 (noting sales representative's "social media profiles and phone number indicate at most that he conducted business from [the district], not that [the defendant] established a place of business there"); Univ. of Ill. Found. v. Channel Master Corp., 382 F.2d 514, 517 (7th Cir. 1967) (holding that a sales representative operating from his home located in the district was insufficient to establish venue under § 1400(b), even where his business card listed his home address and phone number).

While acknowledging "no one fact is controlling" and considering the complete record, the court holds that PFG has failed to meet its burden of demonstrating a prima facie case that venue is proper in this district under § 1400(b). Cray, 2017 WL 4201535, at *9. The evidence, when viewed in the light most favorable to PFG, "merely show[s] that there exists within the district a physical location where an employee of the defendant carries on certain work for his employer." Id. To hold otherwise on this record would be inconsistent with the statute's underlying legislative purpose to restrict venue in patent infringement actions. Id. at *5 ("Courts should be mindful of this history in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, e.g., personal jurisdiction or the general venue statute, with the necessary showing to

establish proper venue in patent cases.").

   **E.   Remedy under 28 U.S.C. § 1406**

   When a case is brought in an improper venue, the district court retains the discretion to "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "However, transfer is 'generally considered to be more in the "interest of justice" than dismissal and, therefore, doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district.'"  <u>Simpson Performance</u>, 2017 WL 3616764, at *8 (quoting <u>Nation v. United States Gov't</u>, 512 F. Supp. 121, 126– 27 (S.D. Ohio 1981)); <u>Columbia Sportswear</u>, 2017 WL 3877858, at *10.

   Here, the parties do not contest that venue is proper in the District of South Carolina.  Given the late stage of the litigation and consistent with Tietex's request for transfer rather than dismissal, the court finds that a transfer to the District of South Carolina would serve the interest of justice, allowing for a prompt resolution of the case on the merits.

**III. CONCLUSION**

   For the foregoing reasons,

   IT IS ORDERED that Tietex's motions to amend its answers and to transfer these actions for improper venue pursuant to Federal

Rule of Civil Procedure 12(b)(3) (Doc. 211) are GRANTED as follows:

1.    Tietex shall file its amended answers in both cases (<u>see</u> Docs. 268-1, 268-2) forthwith.    Because the only amendment permitted is Tietex's denial of venue in this district, PFG's prior replies will be deemed responsive to the answers and counterclaims.

2.    Pursuant to 28 U.S.C. § 1406(a), these actions are TRANSFERRED to the United States District Court for the District of South Carolina, Spartanburg Division, for further proceedings.

/s/    Thomas D. Schroeder
United States District Judge

November 7, 2017